**IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| THE CONTINENTAL INSURANCE COMPANY and VALLEY FORGE INSURANCE COMPANY | : : : | |
| Plaintiffs, | : : : | |
| v. | : : | No. |
| WILMINGTON SAVINGS FUND SOCIETY, FSB, | : : : | |
| Defendant. | : : : | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiffs, The Continental Insurance Company ("CIC") and Valley Forge Insurance Company ("VFI") (collectively the "CNA Insurers"), by and through their undersigned counsel, Kennedys CMK LLP, as and for their Complaint for Declaratory Judgment state as follows:

### NATURE OF THE ACTION

1.     This is an action for declaratory judgment pursuant 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure, in which the CNA Insurers seek a determination concerning obligations to Wilmington Savings Fund Society, FSB ("WSFS"), if any, with respect to an underlying litigation filed by Mary Elizabeth Gibbons ("Gibbons") in the Circuit Court of St. Louis County, Missouri, under docket 22SL-CC04292 (the "Gibbons Action"), against Jacqueline Scott and WSFS (incorrectly named as "Wilmington Savings Fund Society").  A true and correct copy of the Petition filed in the Gibbons Action is attached hereto as **Exhibit A**.

2.     The CNA Insurers seek a declaratory judgment in connection with the following three (3) insurance policies (collectively the "CNA Policies"):

- The CNA Paramount policy issued by CIC to WSFS Financial Corporation under policy number 6078766897 for the policy period August 1, 2020 to August 1, 2021 ("CIC Primary Policy").  A true and correct copy of the CIC Primary Policy is attached hereto as **Exhibit B**.

- The CNA Paramount policy issued by VFI to WSFS Financial Corporation under policy number 6078764244 for the policy period August 1, 2020 to August 1, 2021 ("VFI Primary Policy"). A true and correct copy of the VFI Primary Policy is attached hereto as **Exhibit C**.

- The CNA Paramount Excess and Umbrella Policy issued by CIC to WSFS Financial Corporation under policy number 6078764213 for the policy period August 1, 2020 to August 1, 2021 ("CIC Excess/Umbrella Policy").  A true and correct copy of the CIC Excess/Umbrella Policy is attached hereto as **Exhibit D**.

3.      This Complaint seeks a declaration that CIC and VFI have no obligation to defend or indemnify WSFS under the CNA Policies in connection with the Gibbons Action.

4.      A judicial determination and a declaration of the rights and obligations of the parties is necessary and appropriate because CIC and VFI have no other remedy at law which will adequately resolve the current controversy.

## THE PARTIES

5.      Plaintiff CIC is an insurance company organized and existing under the laws of the Commonwealth of Pennsylvania with its principal place of business in Reading, Pennsylvania.

6.      Plaintiff VFI is an insurance company organized and existing under the laws of the Commonwealth of Pennsylvania with its principal place of business in Reading, Pennsylvania.

7.     Defendant WSFS is a federal savings bank organized and existing under the law of the State of Delaware with its principal place of business in Wilmington, Delaware.

## JURISDICTION AND VENUE

8.     This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure.

9.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a), because this action is between citizens of different states and the amount in controversy exceeds $75,000.

10.     Venue is proper in the District of Delaware pursuant to 28 U.S.C. § 1391(b)(1), because WSFS is a citizen of Delaware and the insurance policies at issue in this action were issued in Delaware.

## FACTUAL BACKGROUND

### A.     The Gibbons Action

11.     The Gibbons Action arises from a dog bite incident that took place in December 2020, which allegedly resulted in Gibbons sustaining serious and permanent personal injuries. See Exhibit A.

12.     The Petition in the Gibbons Action alleges that, on December 22, 2020, Gibbons was walking in the vicinity of 1405 Patterson Road, Florissant, Missouri (referred to in the Petition as "the Property") when four pitbull dogs (referred to as "the Dogs") exited the property and attacked her. Id. at ¶ 6.

13.     The Petition alleges that both Jacqueline Scott and WSFS "owned, harbored, controlled, and/or had custody of the Dogs." Id. at ¶ 7.

14.     The Petition further alleges that WSFS, not Scott, "owned the Property and had, in writing, undertaken an affirmative duty to ensure that the Dogs did not reside on the Property and/or that the Dogs were not allowed to run loose in the area." Id. at ¶ 9.

15.     Furthermore, the Petition alleges that, while Scott resided on the Property, WSFS owned the property and "used and/or maintained the Property as a foreclosed home where it kept, maintained, harbored, controlled, and had custody of the Dogs on the Property." Id. at ¶ 30.

16.     The Petition asserts one count for negligence against WSFS alleging that WSFS failed to properly fence the Property and failed to restrain, monitor, and control the Dogs. Id. at ¶ 27-43.

### B.      Procedural History of the Gibbons Action

17.     The Gibbons Action was filed on or about October 3, 2022.  A true and correct copy of the docket in the Gibbons Action is attached hereto as **Exhibit E**.

18.     After WSFS failed to respond to the Petition within the time required under Missouri law, on March 16, 2023, Gibbons filed a Motion for Default Judgment against WSFS in which Gibbons averred that the Petition was served on WSFS on October 6, 2022 and that WSFS did not file a responsive pleading or other response to the Petition when due on November 5, 2022. See A true and correct copy of Gibbons' Motion for Default Judgment is attached hereto as **Exhibit F**; see also Exhibit E.

19.     According to Gibbons' Motion for Default Judgment, Gibbons served the Petition upon WSFS through the appointment of a process server for out-of-state service on WSFS in Delaware.  See Exhibit F.

20.     According to an Affidavit of Service filed in the Gibbons Action on October 7, 2022, process server Jerrold Allen served WSFS "c/o Controller's Office, Registered Agent, at

500 Delaware Avenue, Wilmington, New Castle County, DE 19801" on October 6, 2022 at 9:30 a.m.  A true and correct copy of the October 7, 2022 Affidavit of Service is attached hereto as **Exhibit G**; see also Exhibit E.

21.     The Affidavit of Service states that service was made "by personally delivering 1 copy(ies) of the [Petition and Summons] to the named Corporation, by serving Tianna Farlow, on behalf of said Corporation." See Exhibit G.

22.     The Affidavit of Service further states:

Tianna Farlow who indicated they were the person authorized to accept with identity confirmed by subject stating their name. The individual accepted service with direct delivery. The individual appeared to be a black-haired black female contact 25-35 years of age, 5'6 - 5'8 tall and weighing 160-180 lbs.

Id.

23.     Ms. Farlow received the Petition and Summons in the Gibbons Action on October 6, 2022.

24.     According to an Affidavit of Service for the Motion for Default Judgment dated April 26, 2023, the Motion for Default Judgment was served upon WSFS on April 20, 2023, at 9:49 a.m. "c/o Controller's Office, Registered Agent, at 500 Delaware Avenue, Wilmington, New Castle County, DE 19801." A true and correct copy of the April 26, 2023 Affidavit of Service is attached hereto as **Exhibit H**; see also Exhibit E.

25.     The Affidavit of Service for the Motion for Default Judgment states that service was made by delivering the motion and notice to "Aaron Keinama who indicated they were authorized to accept with identity confirmed by subject sating their name."  Id.

26. WSFS did not respond to the Motion for Default Judgment.  See Exhibit E.

27. Due to WSFS's failure to respond to the Motion for Default Judgment, Default Judgment was entered against WSFS on June 6, 2023.  A true and correct copy of the June 6, 2023 Order attached hereto as **Exhibit I**; see also Exhibit E.

28. The Order entering Default Judgment states that WSFS failed to respond to the Petition and did not appear at the hearing on the Motion for Default.  See Exhibit I.

29. The Order further states that Gibbons produced testimony and documentary evidence of the injuries she suffered from the dog bite attack.  Id.

30. Due to WSFS's failure to respond, all facts alleged in Gibbons' Petition were deemed admitted by WSFS.  Id.

31. The Default Judgment states that, as a matter of law, WSFS committed a tortious act within the state of Missouri, and Gibbons alleged all facts necessary to state a claim against WSFS.  Id.

32. The court entered Default Judgment against WSFS in the amount of  $15,000,000 plus post-judgment interest at the rate of 10% per annum.  Id.

33. On January 3, 2025, Gibbons filed a Praecipe to Transfer Judgment in the Philadelphia County Pennsylvania Court of Common Pleas under docket number 00297, January Term 2025 (the "Enforcement Action").  A true and correct copy of the Praecipe is attached hereto as **Exhibit J**.

34. The Praecipe requests that judgment be entered against WSFS in the Pennsylvania court for $15,000,000, plus interest from June 6, 2023.  Id.

35. The Praecipe to Transfer Judgment was served upon WSFS at its Philadelphia, Pennsylvania corporate offices.  Id.

C.    **Notice to CIC and VFI of the Gibbons Action**

36.    WSFS received notice of the Gibbons Action on October 6, 2022.

37.    WSFS did not notify CIC or VFI of the Gibbons Action until January 31, 2025.

38.    As of January 31, 2025, a default judgment had been entered against WSFS in the amount of $15,000,000, plus interest.

39.    The CNA Insurers agreed to defend WSFS in the Gibbons Action subject to a reservation of rights.  A true and correct copy of the CNA Insurers' coverage position letters dated February 6, 2025 and April 24, 2025 are attached hereto as **Exhibit K**.

40.    Prior to the entry of default judgment, neither VFI nor CIC was afforded an opportunity to provide a defense to WSFS in the Gibbons Action to ensure that WSFS responded to the Petition.

41.    Prior to the entry of default judgment, neither VFI nor CIC was afforded an opportunity to provide a defense to WSFS in the Gibbons Action to ensure that WSFS responded to the Motion for Default Judgment.

42.    Prior, to the entry of default judgment, neither VFI nor CIC was afforded an opportunity to provide a defense to WSFS in the Gibbons Action to dispute Gibbons' claims, alleged facts, or evidence of her injuries.

## THE POLICIES

A.    **The CIC Primary Policy**

43.    The CIC Primary Policy provides general liability coverage according to its terms, conditions, exclusions and other provisions.  See Exhibit B.

44.    WSFS is a scheduled named insured under the CIC Primary Policy.

45.    The Insuring Agreement of the CIC Primary Policy provides:

**SECTION I – COVERAGES**

**COVERAGE A- BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1.  **Insuring Agreement**

    a.  We will pay those sums that the **Insured** becomes legally obligated to pay as damages because of bodily injury or **property damage** to which this insurance applies. We will have the right and duty to defend the **Insured** against any **suit** seeking those **damages**. However, we will have no duty to defend the I**nsured** against any **suit** seeking **damages** for **bodily injury** or **property damage** to which this insurance does not apply. We may, at our discretion, investigate any **occurrence** and settle any claim or **suit** that may result. But:

    **(1)** The amount we will pay for **damages** is limited as described in Section **III - Limits Of Insurance**; and

    **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage C.

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments  Coverages **A** and **B**.

    b.  This insurance applies to **bodily injury** and **property damage** only if:

    **(1)** The **bodily injury** or **property damage** is caused by an **occurrence** that takes place in the **coverage territory**;

    **(2)** The **bodily injury** or **property damage** occurs during the **policy period**; and

    **(3)** Prior to the **policy period**, no **Insured** listed under Paragraph 1. of Section **II - Who Is An Insured** and no **employee** authorized by you to give or receive notice of an **occurrence** or claim, knew that the or **property damage** had occurred, in whole or in part. If such a listed Insured or authorized **employee** knew, prior to the **policy period**, that the **bodily injury** or **property damage** occurred, then any continuation, change or resumption of such **bodily injury** or **property damage** during or after the **policy period** will be deemed to have been known prior to the **policy period**.

    **c.** **Bodily injury** or **property damage** which occurs during the **policy period** and was not, prior to the **policy period**, known to have occurred by any **Insured** listed under Paragraph 1. of **Section II - Who Is An Insured** or any employee authorized by you to give or receive notice of an **occurrence** or claim, includes any continuation, change or resumption of that **bodily injury** or **property damage** after the end of the **policy period**.

    **d.** **Bodily injury** or **property damage** will be deemed to have been known to have occurred at the earliest time when any **Insured** listed under Paragraph 1. of Section II -Who Is An Insured or any employee authorized by you to give or receive notice of an occurrence or claim:

    **(1)** Reports all, or any part, of the **bodily injury** or **property damage** to us or any other insurer;

    **(2)** Receives a written or verbal demand or claim for **damages** because of the **bodily injury** or **property damage**; or

    **(3)** Becomes aware by any other means that **bodily injury** or **property damage** has occurred or has begun to occur.

    **e.** **Damages** because of **bodily injury** include **damages** claimed by any person or organization for care, loss of services or death resulting at any time from the **bodily injury**.

Id.

46.    The CIC Primary Policy is subject to the following exclusions:

**2. Exclusions**

This insurance does not apply to:

…

**b. Contractual Liability**

    **Bodily injury** or **property damage** for which the **Insured** is obligated to pay **damages** by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for **damages:**

    **(1)** That the **Insured** would have in the absence of the contract or agreement; or

    **(2)** Assumed in a contract or agreement that is an **Insured contract**, provided the **bodily injury** or **property damage** occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in

an **Insured contract**, reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an I**nsured** are deemed to be **damages** because of **bodily injury** or **property damage**, provided:

**(a)**  Liability to such party for, or for the cost of, that party's defense has also been assumed in the same **Insured contract**; and
**(b)**  Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which **damages** to which this insurance applies are alleged.

Id.

47.    The CIC Primary Policy is subject to the following conditions of coverage:

**SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS**

…

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

**a.** You must see to it that we are notified as soon as practicable of an **occurrence** or an offense which may result in a claim. To the extent possible, notice should include:
**(1)** How, when and where the **occurrence** or offense took place;
**(2)** The names and addresses of any injured persons and witnesses; and
**(3)** The nature and location of any injury or damage arising out of the **occurrence** or offense.

**b.** If a claim is made or suit is brought against any **Insured**, you must:
**(1)** Immediately record the specifics of the claim or **suit** and the date received; and
**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or **suit** as soon as practicable.

**c.** You and any other involved **Insured** must:
**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or **suit** ;
**(2)** Authorize us to obtain records and other information;
**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the **suit**; and
**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the **Insured** because of injury or damage to which this insurance may also apply.

**d.** No **Insured** will, except at that **Insured's** own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

Id.

**B.    The VFI Primary Policy**

48.    The VFI Primary Policy provides general liability coverage according to its terms,

conditions, exclusions and other provisions.  See Exhibit C.

49.    WSFS is a scheduled named insured under the VFI Primary Policy.  Id.

50.    The VFI Primary Policy provides general liability coverage as follows:

**SECTION I – COVERAGES**

**COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.    Insuring Agreement**

**f.** We will pay those sums that the **Insured** becomes legally obligated to pay as damages because of bodily injury or **property damage** to which this insurance applies. We will have the right and duty to defend the **Insured** against any **suit** seeking those **damages**. However, we will have no duty to defend the I**nsured** against any **suit** seeking **damages** for **bodily injury** or **property damage** to which this insurance does not apply. We may, at our discretion, investigate any **occurrence** and settle any claim or **suit** that may result. But:

**(1)** The amount we will pay for **damages** is limited as described in Section **III - Limits Of Insurance**; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments  Coverages **A** and **B**.

**g.** This insurance applies to **bodily injury** and **property damage** only if:

(**1**) The **bodily injury** or **property damage** is caused by an **occurrence** that takes place in the **coverage territory**;

(**2**) The **bodily injury** or **property damage** occurs during the **policy period**; and

(**3**) Prior to the **policy period**, no **Insured** listed under Paragraph 1. of Section **II - Who Is An Insured** and no **employee** authorized by you to give or receive notice of an **occurrence** or claim, knew that the or **property damage** had occurred, in whole or in part. If such a listed Insured or authorized **employee** knew, prior to the **policy period**, that the **bodily injury** or **property damage** occurred, then any continuation, change or resumption of such **bodily injury** or **property damage** during or after the **policy period** will be deemed to have been known prior to the **policy period**.

**h.** **Bodily injury** or **property damage** which occurs during the **policy period** and was not, prior to the **policy period**, known to have occurred by any **Insured** listed under Paragraph 1. of **Section II - Who Is An Insured** or any employee authorized by you to give or receive notice of an **occurrence** or claim, includes any continuation, change or resumption of that **bodily injury** or **property damage** after the end of the **policy period**.

**i.** **Bodily injury** or **property damage** will be deemed to have been known to have occurred at the earliest time when any **Insured** listed under Paragraph 1. of Section II -Who Is An Insured or any employee authorized by you to give or receive notice of an occurrence or claim:

(**1**) Reports all, or any part, of the **bodily injury** or **property damage** to us or any other insurer;

(**2**) Receives a written or verbal demand or claim for **damages** because of the **bodily injury** or **property damage**; or

(**3**) Becomes aware by any other means that **bodily injury** or **property damage** has occurred or has begun to occur.

**j.** **Damages** because of **bodily injury** include **damages** claimed by any person or organization for care, loss of services or death resulting at any time from the **bodily injury**.

Id.

51.    The VFI Primary Policy is subject to the following exclusions:

**2. Exclusions**

This insurance does not apply to:

…

**b. Contractual Liability**

**Bodily injury** or **property damage** for which the **Insured** is obligated to pay **damages** by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for **damages:**

**(2)** That the **Insured** would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an **Insured contract**, provided the **bodily injury** or **property damage** occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an **Insured contract**, reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an I**nsured** are deemed to be **damages** because of **bodily injury** or **property damage**, provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same **Insured contract**; and
**(b)** Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which **damages** to which this insurance applies are alleged.

Id.

52.    The VFI Primary Policy is subject to the following conditions of coverage:

**SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS**

…

**2.    Duties In The Event Of Occurrence, Offense, Claim Or Suit**

**a.** You must see to it that we are notified as soon as practicable of an **occurrence** or an offense which may result in a claim. To the extent possible, notice should include:

**(1)** How, when and where the **occurrence** or offense took place;
**(2)** The names and addresses of any injured persons and witnesses; and
**(3)** The nature and location of any injury or damage arising out of the **occurrence** or offense.

**b.** If a claim is made or suit is brought against any **Insured**, you must:

13

(**1**) Immediately record the specifics of the claim or **suit** and the date received; and
(**2**) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or **suit** as soon as practicable.

    **c.**   You and any other involved **Insured** must:
(**1**) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or **suit** ;
(**2**) Authorize us to obtain records and other information;
(**3**) Cooperate with us in the investigation or settlement of the claim or defense against the **suit**; and
(**4**) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the **Insured** because of injury or damage to which this insurance may also apply.

    **d.**   No **Insured** will, except at that **Insured's** own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**...**

Id.

53.    General liability coverage also includes the Financial Services – General Liability

Extension Endorsement, which provides, in part, as follows:

**4. BROAD KNOWLEDGE OF OCCURRENCE/ NOTICE OF OCCURRENCE**

Under **CONDITIONS**, the condition entitled **Duties in The Event of Occurrence, Offense, Claim or Suit** is amended to add the following provisions:

**A. BROAD KNOWLEDGE OF OCCURRENCE**

The **Named Insured** must give the Insurer or the Insurer's authorized representative notice of an **occurrence**, offense or **claim** only when the **occurrence**, offense or **claim** is known to a natural person **Named Insured**, to a partner, executive officer, manager or member of a Named Insured, or to an employee designated by any of the above to give such notice.

**B. NOTICE OF OCCURRENCE**

The **Named Insured's** rights under this **Coverage Part** will not be prejudiced if the **Named Insured** fails to give the Insurer notice of an **occurrence**, offense or **claim** and that failure is solely due to the **Named Insured's** reasonable belief that

14

the **bodily injury** or **property damage** is not covered under this **Coverage Part**. However, the **Named Insured** shall give written notice of such **occurrence**, offense or claim to the Insurer as soon as the **Named Insured** is aware that this insurance may apply to such **occurrence**, offense or **claim**.

Id.

54.     The general liability coverage part includes the following endorsement:

All Hazards in Connection with Designated Premises Exclusion Endorsement

**SCHEDULE**
**Description and Location of Premises**

1. Any premises or property which any insured has acquired or taken physical possession of:
        a. Through mortgage foreclosure proceedings;
        b. As mortgagor in possession;
        c. Through deed in lieu of foreclosure; or
        d. Repossession

2. That portion of any premises occupied by a swimming pool or hot tubs, its deck, and any surrounding pool area

…

It is understood and agreed that under **COVERAGES, Coverage A- Bodily Injury And Property Damage Liability** and **Coverage B - Personal And Advertising Injury Liabilit**y, the paragraphs entitled **Exclusions** , are amended to add the following exclusion:

This insurance does not apply to **bodily injury , property damage** or **personal and advertising injury** arising out of:

1. The ownership, maintenance or use of the premises shown in the Schedule or any property located on these premises;
2. Operations on those premises or elsewhere which are necessary or incidental to the ownership, maintenance or use of those premises; or
3. Goods or products manufactured at or distributed from those premises.

All other terms and conditions of the Policy remain unchanged.

Id.

**C.     CIC Excess/Umbrella Policy**

55.     The CIC Excess/Umbrella Policy provides a $25,000,000 per incident limit, subject

to a $10,000 self-insured retention.   See Exhibit D.

56.     Both the VFI Primary Policy and the CIC Primary Policy are listed as underlying insurance.  Id.

57.     For Coverage A - Excess Follow Form Liability, entities qualifying as insureds under the underlying insurance are insureds for liability in an amount in excess of the limits of underlying insurance.  Id.

58.     For Coverage B – Umbrella Liability, only WSFS Financial Corporation is a named insured, and WSFS is not identified as an insured for umbrella liability.  Id.

59.     The CIC Excess/Umbrella Policy provides excess coverage as follows:

**I. COVERAGES**

**A.  Coverage A - Excess Follow Form Liability**
The Insurer will pay on behalf of the **Insured** those **damages** in excess of the applicable **underlying limits**. Coverage hereunder will attach only after the full amount of the applicable **underlying limits** have been exhausted through payment in legal currency of covered loss under all applicable **underlying insurance** and to which this Coverage A applies**.**

Coverage A under this Policy will then apply in conformance with the provisions of the applicable **underlying insurance** except for the premium, limits of insurance, deductible, retentions, or any defense obligations and any other terms and conditions specifically set forth in this Policy.

Upon exhaustion of the applicable **underlying limits**, the Insurer shall only pay for **damages** in excess of the applicable **underlying limits**. This Coverage A does not provide coverage for any loss not covered by the applicable **underlying insurance** except and to the extent that such loss is not paid under the applicable **underlying insurance** solely by reason of the exhaustion of the applicable **underlying limits** through payment of loss thereunder.

This Coverage applies:

1. if the applicable **underlying insurance** is on an occurrence basis, then only if that which must take place in the policy period of the **underlying insurance** in order to trigger coverage, takes place during this **policy period**; and

Id.

60.     The CIC Excess/Umbrella Policy also provides umbrella coverage as follows:

**B.  Coverage B – Umbrella Liability**

The Insurer will pay on behalf of the **Insured** those **damages** in excess of the **retained amount:**

> **1.**  that an **Insured** becomes legally obligated to pay because of **bodily injury**, **property damage** or **personal and advertising injury**; or

> **2.**  because of liability for **bodily injury** or **property damage** assumed under an **insured contract,** provided the **bodily injury** or **property damage** occurs subsequent to the execution of such **insured contract;** and provided that:

> a. the **bodily injury** or **property damage** occurs during the **policy period**;
> b. the **bodily injury** or **property damage** is caused by an **occurrence** that takes place in the **coverage territory**;
> 
> …

Provided, however, that **Coverage B - Umbrella Liability:**

i. does not apply to:

> **(a)**  any part of **damages** to which **underlying insurance** applies; or
> **(b)**  any part of **damages** to which **underlying insurance** would have applied regardless of:
> > **(1)** the availability of **underlying insurance**; or
> > **(2)** the exhaustion of the applicable **underlying limits;**
> **(c)**  any **defense costs** related to **damages** as described in **a.** and **b.** above.

Id.

61.     The CIC Excess/Umbrella Policy also provides the following duties and conditions:

**II. DEFENSE COSTS PAYMENT AND RELATED DUTIES**

**A.**  The Insurer has the right and duty to defend any **suit**, and the right to assume control of the investigation and settlement of any **claim,** against the **Insured**, as follows:

1.  with respect to the **Coverage A - Excess Follow Form Liability**, upon exhaustion through payment in legal currency of the full amount of the applicable **underlying limits** over which **Coverage A** applies.

…

**C.** The Insurer will pay **defense costs** as follows**:**

1. with respect to the **Coverage A - Excess Follow Form Liability**, **defense costs** are paid within or excess of the limits of insurance as set forth in the applicable **underlying insurance**.

…

**O. Notice of Claims/Crisis Management Event/Covered Accident**

1. Solely with respect to **Coverage A - Excess Follow Form Liability**, if any **underlying insurance** is a policy issued by the Insurer or any of its affiliates, then notice of any **claim** under such **underlying insurance** is notice to the Insurer under this Policy**.**

2. It is a condition precedent to coverage under this Policy that:
 a.  subject to paragraph **b.** below, the **Insured** notify the Insurer as soon as practicable of an **incident** which an **Insured** believes may result in a **claim**. To the extent possible, notice should include:
  i.  how, when and where the **incident** took place;
  ii. the names and addresses of any injured persons and witnesses; and
  iii. the nature and location of any injury or damage arising out of the **incident.**
 b. the **Insured** notify the Insurer as soon as practicable of an **incident** if it involves:
  i. a demand against the **Insured** which exceeds 50% of any remaining applicable **underlying limit**;
  ii. any **underlying insurance** reserve or monetary exposure exceeding $500,000; or
  iii. any of the following:
   (a) brain damage, including but not limited to any neurological impairment of infants or adults and coma;
   (b) spinal cord injury, including but not limited to paraplegia or quadriplegia;
   (c) loss of any organ;
   (d) severe disfigurement, including but not limited to burns and amputations; or
   (e) death.
 c. if a **claim** is made against any **Insured,** the **Named Insured:**
  i. will immediately record the specifics of the **claim** and the date received and notify the Insurer of such **claim**;
  ii. will immediately send the Insurer copies of any demands, notices, summonses or legal papers received in connection with the **claim**;
  iii. will authorize the Insurer to obtain records and other information;
  iv. will cooperate with the Insurer in the investigation or settlement of the **claim** or defense against the **suit**;

> > v. will assist the Insurer, upon its request, in the enforcement of any right against any person or organization which may be liable to the **Insured** because of injury or damage to which this insurance may also apply; and
> >
> > vi. will not voluntarily make a payment, except at its own cost, assume any obligation, or incur any expense, other than for first aid, without the Insurer's prior consent.
>
> 3. **Cooperation**
>
> With respect to both **Coverage A - Excess Follow Form Liability** and **Coverage B – Umbrella Liability**, the **Named Insured** will cooperate with the Insurer in addressing all **claims** required to be reported to the Insurer in accordance with this paragraph **O. Notice of Claims/Crisis Management Event/Covered Accident,** and refuse, except solely at its own cost, to voluntarily, without the Insurer's approval, make any payment, admit liability, assume any obligation or incur any expense related thereto.

Id.

62.    The CIC Excess/Umbrella Policy also includes the following endorsement:

**UNDERLYING INSURANCE COVERAGE LIMITATION ENDORSEMENT**

This endorsement modifies insurance provided under the following:

PARAMOUNT EXCESS AND UMBRELLA LIABILITY POLICY

PARAMOUNT UMBRELLA LIABILITY POLICY

It is understood and agreed as follows:

If this endorsement is attached to the:

**A.** PARAMOUNT EXCESS AND UMBRELLA LIABILITY POLICY, then under **EXCLUSIONS**, the section entitled **Coverage B – Umbrella Liability Coverage Exclusions**; or

**B.** PARAMOUNT UMBRELLA LIABILITY POLICY, then under **EXCLUSIONS**, the section entitled **Coverage A – Umbrella Liability Exclusions**,

it is amended with the addition of the following new exclusion:

**Underlying Insurance Coverage Limitation**

19

Notwithstanding anything to the contrary, this policy does not provide broader coverage than that which is provided by any **underlying insurance**. In the event of any difference between:

a. exclusions, restrictions, limiting terms or conditions in this policy and
b. exclusions, restrictions, limiting terms or conditions in the **underlying insurance**;

addressing the same general risk or hazard, then the more restrictive provision shall apply.

All other terms and conditions of the policy remain unchanged.

Id.

## COUNT I – DECLARATORY RELIEF
### No Duty to Defend or Indemnify under the VFI Primary Policy
### (Hazards in Connection with Designated Premises Exclusion Endorsement)

63.     The CNA Insurers repeat and reallege the allegations set forth in paragraphs 1 through 62 as if fully set forth herein.

64.     The VFI Primary Policy is endorsed with the Hazards in Connection with Designated Premises Exclusion Endorsement.  See Exhibit C.

65.     The Hazards in Connection with Designated Premises Exclusion Endorsement states that the policy does not provide coverage for bodily injury arising out of: "1. The ownership, maintenance or use of the premises shown in the Schedule or any property located on these premises."  Id.

66.     The Schedule to the Hazards in Connection with Designated Premises Exclusion Endorsement states:

1. Any premises or property which any insured has acquired or taken physical possession of:

    a. Through mortgage foreclosure proceedings;
    b. As mortgagor in possession;
    c. Through deed in lieu of foreclosure; or
    d. Repossession

Id.

67.     Gibbons' alleged injuries arise from WSFS's ownership, maintenance, or use of a premises that was acquired through foreclosure.

68.     Accordingly, the Hazards in Connection with Designated Premises Exclusion Endorsement precludes coverage for WSFS in the Gibbons Action.

69.     For these reasons, the CNA Insurers seek a declaration from this Court that VFI does not owe any duty to defend or to indemnify WSFS in connection with the Gibbons Action under the VFI Primary Policy.

## COUNT II – DECLARATORY RELIEF
### No Duty to Defend or Indemnify under the VFI Primary Policy
### (Late Notice)

70.     The CNA Insurers repeat and reallege the allegations set forth in paragraphs 1 through 69 as if fully set forth herein.

71.     The VFI Primary Policy includes the Financial Services – General Liability Extension Endorsement, which includes the Broad Knowledge of Occurrence/Notice of Occurrence provision.  See Exhibit C.

72.     Under the Broad Knowledge of Occurrence/Notice of Occurrence provision, WSFS must give VFI or the VFI's authorized representative notice of an occurrence, offense or claim when the occurrence, offense or claim is known to a partner, executive officer, manager or member of WSFS or to an employee designated by any of the above to give such notice.  Id.

73.     Compliance with the Broad Knowledge of Occurrence/Notice of Occurrence provision is a condition precedent to coverage under the VFI Primary Policy.

74.     The Petition in the Gibbons Action was delivered to Ms. Farlow on October 6, 2022, who was an individual that had previously accepted service on WSFS's behalf.

75.     Upon information and belief, the Gibbons Action was uploaded into WSFS Financial Corporation's "Legal Vault" program.

76.     Upon information and belief, the Gibbons Action was known to a partner, executive officer, manager or member of a Named Insured, or to an employee designated by any of the above to give such notice since October 2022 but was not reported to VFI until January 31, 2025.

77.     Accordingly, under the Broad Knowledge of Occurrence/Notice of Occurrence provision of the VFI Primary Policy, notice to VFI was late and did not comply with policy conditions.

78.     VFI has been prejudiced by WSFS's late notice and failure to comply with the policy's notice provision, because a default judgment was entered against WSFS in the Gibbons Action in the amount of $15,000,000 plus interest at a time when WSFS was given no opportunity to defend WSFS against the Gibbons Action or mitigate damages incurred by WSFS in the Gibbons Action.

79.     For these reasons, the CNA Insurers seek a declaration that VFI does not owe a duty to defend or to indemnify WSFS in connection with the Gibbons Action under the VFI Primary Policy.

**COUNT III – DECLARATORY RELIEF**
**No Duty to Defend or Indemnify under the CIC Primary Policy**
**(Late Notice)**

80.     The CNA Insurers repeat and reallege the allegations set forth in paragraphs 1 through 79 as if fully set forth herein.

81.     The CIC Primary Policy provides:

**2.  Duties In The Event Of Occurrence, Offense, Claim Or Suit**

a. You must see to it that we are notified as soon as practicable of an **occurrence** or an offense which may result in a claim. To the extent possible, notice should include:

> (1) How, when and where the **occurrence** or offense took place;
>
> (2) The names and addresses of any injured persons and witnesses; and
>
> (3) The nature and location of any injury or damage arising out of the **occurrence** or offense.

b. If a claim is made or suit is brought against any **Insured**, you must:

> (1) Immediately record the specifics of the claim or **suit** and the date received; and
>
> (2) Notify us as soon as practicable.
>
> You must see to it that we receive written notice of the claim or **suit** as soon as practicable.

c. You and any other involved **Insured** must:

> (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or **suit** ;
>
> (2) Authorize us to obtain records and other information;
>
> (3) Cooperate with us in the investigation or settlement of the claim or defense against the **suit**; and

See Exhibit B.

82.    Compliance with the Duties in the Event of Occurrence, Offense or Suit provision is a condition precedent to coverage under the CIC Primary Policy.

83.    WSFS received the Petition in the Gibbons Action on October 6, 2022.  See Exhibit G.

84.    The Petition in the Gibbons Action was delivered on October 6, 2022 to Ms. Farlow, an employee of WSFS Financial Corporation.

85.    Upon information and belief, the Gibbons Action was uploaded into WSFS Financial Corporation's "Legal Vault" program.

86.    WSFS had knowledge of the Gibbons Action since October 6, 2022.

87.    WSFS did not immediately provide a copy of the Petition to CIC after it was received by WSFS on October 6, 2022.

88.    WSFS did not notify CIC of the Gibbons Action until January 31, 2025, which was after the Default Judgment was entered against WSFS.

89.    Accordingly, under the Duties in the Event of Occurrence, Offense or Suit provision of the CIC Primary Policy, notice to CIC was late and did not comply with policy conditions.

90.    CIC has been prejudiced by WSFS's late notice and failure to comply with the policy's notice provision because a default judgment was entered against WSFS in the Gibbons Action in the amount of $15,000,000 plus interest at a time when WSFS was given no opportunity to defend WSFS against the Gibbons Action or mitigate damages incurred by WSFS in the Gibbons Action.

91.    For these reasons, CIC seeks a declaration that CIC does not owe a duty to defend or to indemnify WSFS in connection with the Gibbons Action under the CIC Primary Policy.

**COUNT IV – DECLARATORY RELIEF**
**No Duty to Defend or Indemnify Under the CIC Excess/Umbrella Policy**
**(Underlying Coverage Limitation)**

92.    The CNA Insurers repeat and reallege the allegations set forth in paragraphs 1 through 91 as if fully set forth herein.

93.    The CIC Excess/Umbrella Policy provides excess and umbrella coverage. See Exhibit D.

94.    However, excess follow form coverage is only triggered upon exhaustion of the CIC Primary Policy and VFI Primary Policy. See Exhibit D.

95.    Because the CIC Primary Policy and the VFI Primary Policy are not exhausted, coverage is not triggered under the CIC Excess/Umbrella Policy.

96.     However, even if triggered, coverage is precluded under both the excess follow form and umbrella coverages due to the Underlying Insurance Coverage Limitation Endorsement, which provides that excess follow form coverage and umbrella coverage are subject to the same limitations and exclusions of the CIC Primary Policy and VFI Primary Policy.

97.     Because coverage is not available under the CIC Primary Policy or the VFI Primary Policy, coverage is not available under the excess follow form coverage or the umbrella coverage of the CIC Excess/Umbrella Policy.

98.     For these reasons, the CNA Insurers seek a declaration that CIC does not owe a duty to defend or to indemnify WSFS in connection with the Gibbons Action under the CIC Excess/Umbrella Policy.

**COUNT V – DECLARATORY RELIEF**
**No Duty to Defend or Indemnify under the CIC Excess/Umbrella Policy**
**(Late Notice)**

99.     The CNA Insurers repeat and reallege the allegations set forth in paragraphs 1 through 98 as if fully set forth herein.

100.    Under the CIC Excess/Umbrella Policy, for both excess follow form coverage and umbrella coverage, WSFS is obligated to notify CIC if a claim is made against it and immediately send to CIC copies of any demands, notices, summonses or legal papers received in connection with the claim.  See Exhibit D.

101.    In addition, WSFS is required to notify CIC of any incident that may result in a claim as soon as practicable.

102.    Compliance with these conditions is a condition precedent to coverage under the CIC Excess/Umbrella Policy.

103.    After WSFS received the Petition in the Gibbons Action on October 6, 2022, WSFS did not immediately provide a copy of the Petition to CIC.

104.    WSFS did not notify CIC of the Gibbons Action until January 31, 2025, which was after the Default Judgment was entered against WSFS.

105.    Accordingly, under the applicable notice provision of the CIC Excess/Umbrella Policy, notice to CIC was late and did not comply with policy conditions.

106.    CIC is prejudiced by WSFS's late notice and failure to comply with the policy's notice provision because a default judgment was entered against WSFS in the Gibbons Action in the amount of $15,000,000 plus interest at a time when WSFS was given no opportunity to defend WSFS against the Gibbons Action or mitigate damages incurred by WSFS in the Gibbons Action.

107.    For these reasons, the CNA Insurers seek a declaration that CIC does not owe a duty to defend or to indemnify WSFS in connection with the Gibbons Action under the CIC Excess/Umbrella Policy.

**WHEREFORE**, Plaintiffs, Valley Forge Insurance Company and The Continental Insurance Company, pray for judgment in their favor and against Defendant Wilmington Savings Fund Society, FSB:

(a) For a declaration that VFI has no duty to defend or to indemnify Wilmington Savings Fund Society, FSB under the VFI Primary Policy in connection with the Gibbons Action;

(b) For a declaration that CIC has no duty to defend or to indemnify Wilmington Savings Fund Society, FSB under the CIC Primary Policy in connection with the Gibbons Action;

(c) For a declaration that CIC has no duty to defend or to indemnify Wilmington Savings Fund Society, FSB under the CIC Excess/Umbrella Policy in connection with the Gibbons Action;

(d) For reimbursement of defense costs incurred in defending WSFS;

(e) For interest, attorneys' fees, and costs pursuant to law; and

(f) For such other and further relief as the Court deems equitable and just.


DATED: May 16, 2025                    KENNEDYS CMK LLP

                                      */s/ Marc Casarino*
                                      Marc Casarino (DE 3613)
                                      222 Delaware Avenue, Suite 710
                                      Wilmington, DE 19801
                                      Direct: 302-308-6647
                                      Email: marc.casarino@kennedyslaw.com

                                      -and-

                                      Louis H. Kozloff
                                      Frances A. Lettieri
                                      (*both to be admitted pro hac vice*)
                                      KENNEDYS CMK LLP
                                      1600 Market Street
                                      Suite 1410
                                      Philadelphia, PA 19103

                                      Attorneys for Plaintiffs
                                      *The Continental Insurance Company and Valley Forge Insurance Company*